Merrimack,
Dec., 1899.

## STATE (O'BRIEN, *Compl't*) *v.* SAIDELL.

Upon the trial of a complaint for bastardy, an exhibition of the child whose paternity is sought to be established may be permitted for the purpose of showing its resemblance to the defendant in racial or individual characteristics.

Evidence as to the nationality of the defendant in a bastardy proceeding is unobjectionable when accompanied by an instruction that it is to be considered only as bearing upon the question of paternity.

A verdict will not be disturbed because of the erroneous admission in evidence of a newspaper item relating solely to a matter not in dispute.

When the chastity of a party is called in question upon cross-examination, evidence to refute the insinuation is competent.

If part of a conversation is elicited upon cross-examination, the remainder may be stated so far as it tends to explain or qualify the portion already in evidence.

Where a cross-examination suggests that the accusation against the defendant in a bastardy proceeding was an afterthought, the time when and the circumstances under which it was first made may be shown.

An insinuation in cross-examination, concerning the conduct of a justice at a preliminary hearing, may be rebutted by evidence that the trial conformed to the usual procedure.

COMPLAINT FOR BASTARDY. Verdict, that the defendant is chargeable.

1. Subject to the defendant's exception, a witness testified that the defendant is a Jew. The child was exhibited to the jury; and they were instructed, subject to exception, as follows: "The fact that the defendant is a Jew must not be allowed to prejudice him in the eyes of the jury. There is no more reason for finding a verdict against him because he is a Jew than for deciding against the complainant because she bears an Irish name. The nationality of the defendant is to be considered only so far as the appearance in the child of characteristics peculiar to that race, together with the lack of evidence tending to show connection of the complainant with any other person of that race, leads to the inference that the defendant is the father of the child."

2. The complainant's testimony tended to prove that the child was begotten at Penacook, on a day when her mother had gone with other married women upon a sleigh ride to Concord. A witness for the plaintiff testified as to the sleigh ride, and that she had refreshed her memory by looking at a newspaper containing an article relating thereto. On cross-examination, counsel in-

quired regarding the contents of the article. On redirect examination, the witness read the article, subject to exception. It was as follows: "The married women took a sleigh ride to Concord to-day." It was not disputed that the ride occurred February 24.

3. Upon cross-examination of witnesses for the plaintiff, the complainant's character for chastity was called in question. Subject to the defendant's exception, they testified that they had never known anything against her.

4. The plaintiff inquired of a witness if he had testified before the grand jury. He answered, "Yes." The defendant excepted. The plaintiff withdrew the question, and the court instructed the jury to disregard the testimony and found that they did so.

5. Two witnesses testified that the defendant had offered them bribes to testify falsely that they had been intimate with the complainant. On cross-examination, they were asked if they had told Isaac Saidell, the defendant's brother, that they had been intimate with the complainant, and if Isaac did not talk as though he thought it was the fact. They testified that they did not remember how Isaac talked. On redirect examination, they gave, subject to the defendant's exception, Isaac's reply to their statement that they had not been intimate with the complainant. The defendant was not present at the time of this conversation.

6. The father of the complainant was asked by the defendant whether the complainant had, on February 24, or during the subsequent stay of the defendant at her father's house, or before the complaint was made on which the defendant was arrested, complained to him against the defendant, or told him who was the father of the child. On redirect examination, the plaintiff inquired whether the complainant, as soon as her condition was discovered, told him who was the father of the child. The witness replied, "Yes; Morris." The defendant excepted to the answer.

7. Upon cross-examination, the defendant inquired how the preliminary examination before the police court was conducted, and whether the judge had not acted as counsel for the complainant. Upon redirect examination, the witness testified that the hearing was conducted regularly — like any hearing before the police court. The defendant excepted.

8. For the purpose of contradicting her, the defendant read several questions and answers of the complainant's deposition. Subject to the defendant's exception, the plaintiff then read the rest of the deposition, claiming that it all tended to explain the part put in evidence by the defendant. The court did not understand that the defendant insisted upon his exception, and is unable to state what questions and answers he read.

*Sargent & Niles*, for the plaintiff.

*Martin & Howe*, for the defendant.

PEASLEE, J. 1. The comparison of the child with the defendant as an individual, or with his race, was properly allowed. " Under the well established physiological law that like begets like, and that generally there is a resemblance, more or less strong and striking, between the parent and his child, it was a fair matter of argument before the jury by the counsel on both sides, whether or not there had been anything in the complexion, appearance, and features of the child which the witness had produced and identified before them tending to indicate its other parent." *Gilmanton* v. *Ham*, 38 N. H. 108, 113. Even in those jurisdictions where the rule above laid down is not followed, comparison is allowed in respect to race characteristics. " No one will doubt the propriety or reason upon which these decisions are based, . . . for it is well understood that there are marked distinctions, physical and external, between the different races of mankind, which may enable men of ordinary intelligence and observation to judge whether they are of one race or another." *Clark* v. *Bradstreet*, 80 Me. 454. The instruction excepted to limited this evidence to its legitimate sphere and was unobjectionable.

2. It would seem that it was proper to allow the newspaper item to be read after the defendant had inquired fully as to its contents. But whether it was so or not is of no consequence, for the item related solely to a matter which was not in dispute. If its admission was erroneous, it was also harmless. *Wait* v. *Association*, 66 N. H. 581.

3. Evidence to refute the insinuations against the complainant's character was competent. *Valley* v. *Railroad*, 68 N. H. 546.

4. This exception is disposed of by the finding at the trial term. *Wason* v. *Burnham*, 68 N. H. 553.

5. The cross-examination of the witnesses as to their conversation with Isaac was designed to impeach their testimony. A part of the conversation having been called for, it was competent to have the whole stated upon redirect examination, so far as it explained or qualified the matters inquired about on cross-examination. *Wentworth* v. *McDuffie*, 48 N. H. 402.

6. The inquiry of the complainant's father was evidently made for the purpose of showing that she made no accusation against the defendant until this proceeding was commenced. The inference to be drawn from this would be that the charge against him was an afterthought. It therefore became material to show the time when and the circumstances under which she first made complaint. *Mange* v. *Holmes*, 7 Allen 136.

7.   The materiality of evidence concerning the conduct of the justice before whom the preliminary examination was had is not apparent; but if it was material, the insinuation contained in the defendant's inquiry as to the conduct of the justice was properly rebutted by evidence that the trial was conducted in the usual way.   *Valley* v. *Railroad, supra.*

8.   This exception is disposed of by the failure of the defendant to properly insist upon it.   *Felch* v. *Weare,* 66 N. H. 582.

*Exceptions overruled.*

PIKE, J., did not sit: the others concurred.