Ernest F. MITCHELL, Jr., et al.,
Plaintiffs-Appellees,

v.

FORD MOTOR COMPANY,
Defendant-Appellant.

No. 75–1176.

United States Court of Appeals,
First Circuit.

March 29, 1976.

Eugene M. Van Loan, III, Manchester, N. H., with whom Wadleigh, Starr, Peters, Dunn & Kohls, Manchester, N. H., was on brief, for appellant.

David J. Killkelley, Laconia, N. H., with whom Nighswander, Lord, Martin & Killkelley, Laconia, N. H., was on brief, for plaintiffs-appellees.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

ALDRICH, Senior Circuit Judge.

This is a diversity action brought in the District Court for the District of New Hampshire against a manufacturer for personal injury allegedly due to a defectively designed brake lever (handle) on a dump truck. The sole issue we reach is whether there was evidence to support the jury finding of liability.

On plaintiff's evidence plaintiff, a contractor, purchased the truck when it was a few months old, and had been driven about 5,000 miles. Approximately one year and 20,000 miles later, the accident occurred. Plaintiff was not the sole user of the truck, but he drove it regularly. On the day in question, while backing down a slight incline to connect with a trailer, he accidentally struck the trailer and started it down the incline. He stopped the truck, took the motor out of gear, pulled on the handbrake, left the truck, and pursued the trailer. The brake did not hold, and the truck backed over him. The brake would have held if it had been fully applied.

Plaintiff was 5'4" tall and, accordingly, drove the truck with the seat all the way forward. Because of brake wear, which increased the lever's "travel," if fully applied at the time of the accident the lever would have come to within three inches of the seat in the forward position. Plaintiff's experts testified that, because of its shortness, this made application awkward, especially if the user employed a particular grip or grasp, and that, in their opinion, a proper design would have provided a longer lever to clear the top of the seat. Although

defendant asserted a reason for the supplied length, we accept plaintiff's experts' opinion, but subject to other established factors which have a bearing on the ultimate conclusion.

As manufactured, the lever did not come close to the seat. Anticipating wear, defendant had provided a compensatory adjustment. After the accident such an adjustment was made. It took but minutes. While not, of course, determinative, there was no affirmative evidence that defendant was ever aware of a handle problem.[1]

Before addressing basic principles, we must fault plaintiff's brief in two particulars. First, it says that the defect was not obvious. Secondly, it says plaintiff should not have to "continuously make an adjustment to the brake to fit his height" "every time [he] uses the truck." These are patent attempts to shift the facts to avoid the issues. Of course the defect—if it was a defect—was obvious. There was no suggestion that anything had gone suddenly wrong. Brake wear is gradual, and in the case of the handle's changed position, perceptible. We refrain from answering plaintiff's brief's other contention, that a condition that developed during 25,000 miles and had never been corrected, would require adjustment "every time he uses the truck."

Even the strict admiralty doctrine of unseaworthiness—liability without fault—does not require perfection. *See Mitchell v. Trawler Racer, Inc.,* 1960, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941, 948; *Doucette v. Vincent,* 1 Cir., 1952, 194 F.2d 834, 837–38. There is probably little that could not be improved, or, at least, that some person having sufficient qualifications to be called an expert would not say could have been improved, selecting, after the event, which design would have been better. That, however, is not the test. As the court said in *Weakley v. Fischbach & Moore, Inc.,* 5 Cir., 1975, 515 F.2d 1260, at 1267–68,

"[Plaintiffs] rely principally on an attempted showing that there were design alternatives which, had they been adopted, would have prevented the accident or minimized its consequences. Such a showing, by itself, is insufficient to establish liability. . . . It is one thing to show that the defendant might have designed a safer product; quite another to show that the product he did design was unreasonably dangerous. The defendant is not obliged to design the safest possible product, or one as safe as others make or a safer product than the one he has designed, so long as the design he has adopted is reasonably safe. W. Prosser, The Law of Torts § 96, at 645 (4th ed. 1971)."

In *Brown v. General Motors Corp.,* 4 Cir., 1966, 355 F.2d 814, at 820, *cert. denied,* 386 U.S. 1036, 87 S.Ct. 1474, 18 L.Ed.2d 600, the court said,

"Failure to adopt the most modern, or even a better safeguard, did not render the manufacturer liable to the injured mechanic. . . . There is no indication in the evidence that the shield was not at least a reasonable preventive of injury."

*Brown* was cited with approval by the New Hampshire court in *Murray v. Bullard Co., post.*

■■■ To come to specifics, a manufacturer is not under a duty to supply materials that will not wear out. *McLaughlin v. Sears, Roebuck & Co.,* 1971, 111 N.H. 265, 268; 281 A.2d 587, 589. There the court said,

"The duty of the manufacturer or supplier is limited to foreseeing the probable results of the normal use of the product or a use that can reasonably be anticipated. Prosser, Torts 667 (3d ed. 1964); . . . Clearly there is no duty to furnish a product that will not wear out."

---

1. Defendant offered to show, negatively, that it had sold this truck in large numbers for a period of years without any claim based on the design of the lever. Plaintiff objected, saying it was highly prejudicial, and that the rule allowing evidence of prior accidents "does not work

in the negative." The court agreed. We need not reach this question, but note *Menard v. Cashman,* 1945, 93 N.H. 273, 274, 41 A.2d 222; *Pittman v. Littlefield,* 1 Cir., 1971, 438 F.2d 659, 662.

Plaintiff points out that an expert witness, called by defendant, testified that he "wouldn't think he'd make any adjustments unless he found it non-functional." This is not only contrary to defendant's operating manual's instructions to check brakes, but is contrary to common sense. An emergency brake that must fail before attention is to be given it, by hypothesis cannot be depended upon in an emergency. Nor is this the law. The user of a mechanism that is known to be subject to wear must do more than simply repair it after it fails. The contrary opinion of some witness, even though he may qualify as an expert, does not change the result; questions of law are for the court. The law is that a manufacturer does not have to anticipate that maintenance will be neglected. In *Murray v. Bullard Co.,* 1970, 110 N.H. 220, 225; 265 A.2d 309, 313, the court approved the principle that defendant "is not liable where 'injury results from a failure to keep the manufactured product in good working order.'"

 As was said in *Kaczmarek v. Mesta Mach. Co.,* 3 Cir., 1972, 463 F.2d 675, at 678,

> "Common sense dictates that there should be frequent if not periodic inspections and replacement of the worn parts as soon as they are detected."

Plaintiff's own expert testified,

> "[T]he adjustment should be checked periodically; . . . you are put on the alert for changing the adjustment if you find it is getting too loose or that the handle is coming back too far."

Instead, plaintiff is claiming that a dump truck's brake assembly should be so perfect that he should not be required to maintain it, or make use of the adjustment feature provided, even though the wear was apparent, and tha' after 25,000 miles it should work as it did at the beginning.

Product liability in the individual case is paid for by the manufacturer, or its insurer, but in the long run whatever standard has to be met is reflected in the cost of the product. A standard that would permit an owner to neglect wear which is expectable and apparent, not to mention easily remediable by a design provision, imposes altogether too high a burden.

*Reversed. Judgment for the defendant.*[2]

---

**2.** In fairness to the district court, since no case cited in this opinion, except one in the footnote, was furnished us by the defendant, presumably none was to it. Where a verdict runs into six figures we believe courts have a right to expect a modicum of diligence on the part of counsel.