Hillsborough
No. 7555

PETER J. BRESCIA & a.

v.

GREAT ROAD REALTY TRUST

February 28, 1977

*Stein & Gormley,* of Nashua (*Mr. Morris D. Stein* orally) for the plaintiffs.

*Wyman, Bean & Stark,* of Manchester (*Mr. Rodney L. Stark* orally) for the defendant.

BOIS, J.   Peter Brescia was employed by Constructors, Incorporated, a construction company, when he suffered on-the-job injuries as the result of the collapse of the boom of a truck crane owned by and leased from the defendant Great Road Realty Trust. Plaintiff brought this suit seeking to recover damages on alternative theories of strict liability and implied warranty. Dianne L. Brescia is seeking damages for the loss of her husband's consortium.

The defendant moved to dismiss on the ground that the trust was not "some person other than the employer," and thus shared in the statutory immunity from suit provided Constructors under the workmen's compensation act. RSA 281:14 I.

The sole witness at the hearing held on the nature of the relationship between Constructors and the Trust was one Lawrence Moore who testified that he was president, treasurer and sole stockholder of Constructors, and that he was also sole stockholder, trustee, and beneficiary (with his wife) of Great Road Realty Trust. The Trust owned certain parcels of land which it rented to Constructors, and on some of which it had built sheds to house the

construction company's equipment. The rental agreements were verbal, and repairs on the property were performed by Constructors. The Trust has never had any employees, and was formed solely as a tax-saving device pursuant to professional advice.

The crane in question was purchased by Mr. Moore on behalf of the Trust simply because at the time Constructors was low on cash. Constructors already owned three cranes, and it added the fourth "leased" crane (again the rental agreement was verbal) to its fleet. The Trust never did anything after it received the crane other than turn it over to the construction company.

The superior court denied the motion to dismiss. The defendant also moved for dismissal on the grounds that plaintiffs had not stated a cause of action in either strict liability or implied warranty. This motion was also denied and defendant's exceptions to the denial of both motions have been reserved and transferred by the Trial Court (*Batchelder, J.*).

We find it unnecessary to comment upon the question of whether the Trust is "some person other than the employer" for purposes of workmen's compensation law, since we agree that plaintiffs have not stated a cause of action either in strict liability or implied warranty.

■ Restatement (Second) of Torts, section 402-A (1965) provides for recovery in strict liability as follows:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

We have spoken of strict liability as applying in actions against manufacturers and sellers. *McLaughlin v. Sears, Roebuck,* 111 N.H. 265, 281 A.2d 587 (1971); *Buttrick v. Lessard,* 110 N.H. 36, 260 A.2d 111 (1969). The applicability of the doctrine in an action between a lessee and lessor is not well established. Annot., *Products Liability—Strict Liability in Tort,* 13 A.L.R.3d 1057, 1096–97 (1967). Restatement (Second) of Torts § 402-A, comment *f* at 350

(1965) indicates that the doctrine does not apply to the occasional seller not engaged in selling as a part of his business, nor to sales of the stock of merchants out of the usual course of business. Thus to the extent the doctrine is applicable to a lease arrangement, it would seem to be applicable only where the lease in question represents something more than business happenstance on the part of the lessor. *See Cintrone v. Hertz Truck Leasing,* 45 N.J. 434, 212 A.2d 769 (1965).

In the instant case, it is undisputed that the lease arrangement was a mere business arrangement. The defendant does not deal in cranes, and its role as lessor was due solely to the shortage of funds at Constructors. There is no evidence that the Trust has any dealings with the general public; rather, the Trust exists only to serve Constructors. Professor Prosser has observed: "As to strict liability, whether on warranty or in tort, no case has been found in any jurisdiction in which it has been imposed upon anyone who was not engaged in the business of supplying goods of the particular kind." W. Prosser, Law of Torts § 100, at 664 (4th ed. 1971). The defendant Trust was not in the business of supplying cranes, and it cannot be held accountable in strict liability.

We next consider plaintiffs' attempt to recover on an implied warranty theory. In this state, the statutory implied warranties of the Commercial Code are deemed to afford a complete remedy, and no common law cause of action in contract based on implied warranty is recognized. *Stephan v. Sears Roebuck & Co.,* 110 N.H. 248, 250, 266 A.2d 855, 857 (1970). The Code provides two implied warranties: A warranty of general merchantability, applicable if the seller is a merchant with respect to goods of that kind (RSA 382–A:2–314); and a warranty of fitness for a particular purpose, applicable if the seller has reason to know any particular purpose for which the goods are required and the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. RSA 382–A:2–315. These warranties are "imposed by law on the basis of public policy. They arise by operation of law because of the relationship between the parties, the nature of the transaction, and the surrounding circumstances." *Elliott v. Lachance,* 109 N.H. 481, 483–84, 256 A.2d 153, 155 (1969). In applying these warranties we must take into account commercial realities. *See* RSA 382–A:1–102.

The application of the implied warranty doctrine to a lease arrangement is not settled in the cases. Annot., *Application of Warranty Provisions of Uniform Commercial Code to Bailments,* 48 A.L.R. 3d 668 (1973); *see Elliott v. Lachance,* 109 N.H. 481, 486, 256 A.2d 153, 157 (1969). We assume, *arguendo,* that under proper circumstances a lease arrangement would be embraced by the Code warranties.

■■ It is clear that plaintiffs, herein, cannot succeed on their warranty cause of action. The implied warranty of merchantability is applicable only if the seller is a merchant with respect to goods of that kind. RSA 382–A:2–104 (1) defines a merchant as one who deals in goods of that kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the goods involved. It is evident that here the defendant cannot be considered a merchant within the meaning of this definition. *See* J. White & R. Summers, Uniform Commercial Code § 9–6, at 289 (1972).

Any claim of warranty of fitness for a particular purpose must also fail. This warranty is applicable only if the seller has reason to know that the buyer is relying on the seller's skill or judgment. The defendant lessor here possessed no skill or judgment upon which the lessee relied; indeed the reality is that for Commercial Code purposes the lessor and lessee constituted a single entity in the person of Lawrence Moore. To speak of "reliance" in these circumstances would be to indulge in an absurdity. *See also* RSA 382–A:2–318.

Plaintiffs cannot succeed in their claims of strict liability and/or implied warranty. The motion to dismiss should have been granted.

ON REHEARING: After the foregoing opinion was filed, the parties' motions for rehearing were granted.

*Stein and Gormley* (*Mr. Morris D. Stein* orally) for plaintiffs.

*Wyman, Bean & Stark* (*Mr. Rodney L. Stark* orally) for defendant.

BOIS, J. The court was informed that plaintiff's action in the trial court included a claim based on negligence. No mention of a negligence count was included in either the reserved case or the briefs of the parties. Reference to such an allegation was not made at the time of oral argument and we thus had no occasion to discuss negligence in the earlier opinion.

"One who leases a chattel as safe for immediate use is subject to liability . . . if the lessor fails to exercise reasonable care to make it safe for such use or to disclose its actual condition to those who may be expected to use it." Restatement (Second) of Torts § 408 (1965). The duty imposed is operationally related to the real life circumstances of the lessor, and thus the inspection required varies with "the length of time during which [the chattel] has been in the lessor's possession and use." *Id.*, comment *a*, at 367.

The undisputed facts in the instant case show that the lessor served merely as a source of funds for purchase of the crane. It did not purport, and was not expected, to do anything after it received the crane other than turn it over to the construction company. The lessor never had meaningful possession and use of the chattel, and clearly had no role to play with respect to its safety.

This is not a case where the lessor can be said to be negligent because of failure to inspect the crane, *LaRocca v. Farrington,* 301 N.Y. 247, 93 N.E.2d 829 (1950), or failure to assemble it properly, *Wujnovich v. Equipment Corp.,* 54 F. Supp. 465 (W.D. Pa. 1944), or failure to make safe repairs, *Scharf v. Gardner Cartage Co.,* 95 Ohio App. 153, 113 N.E.2d 717 (1953). The lessor here had no occasion for any of these breaches of duty.

It cannot be said that the lessor leased the chattel "as safe for immediate use." Plaintiffs' negligence claim must fail.

*Former result affirmed; exceptions sustained.*

All concurred.
April 29, 1977.